**Stephen Andrew KNIGHT, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

Civ. A. No. 87–2581.

United States District Court, District of Columbia.

Aug. 23, 1988.

Michael J. Eig, Bogin & Eig, and, on brief, Beth Goodman, Bogin & Eig, and

Diane M. Smith, Washington, D.C., for plaintiffs.

Jeffrey M. Ford, Asst. Corp. Counsel, District of Columbia, for defendants.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

Under the Education of the Handicapped Act, 20 U.S.C. §§ 1400—1461, the District of Columbia is required to provide a "free, appropriate public education" to all handicapped children within its jurisdiction. *Id.* at § 1400(c). This education must emphasize special education and related services and must be tailored to meet the unique needs of each handicapped child. *Id.; see also, e.g., McKenzie v. Smith,* 771 F.2d 1527 (D.C.Cir.1985). As a means to this end, the District of Columbia is required to develop an Individualized Educational Program ("IEP")[1] for each handicapped child and to arrange for public or publicly funded private schooling of each handicapped child in a facility "appropriate" for realizing the goals specified in the IEP.

In this suit, plaintiffs challenge virtually every procedural and substantive aspect of the 1987–88 IEP and suggested educational placement developed by the District of Columbia for Stephen Andrew ("Andy") Knight. As that school year has concluded, they ask the Court to order defendants to reimburse them for the costs of Andy's 1987–88 education. The Court held a one-day trial of this case on June 27, 1988, and, after carefully considering the law, the legal arguments advanced by both parties, and the evidence presented at trial, the Court finds that plaintiffs are entitled to judgment in their favor.[2]

## BACKGROUND

Andy Knight is a thirteen-year-old boy who lives in the District of Columbia. Although he is of above-average intelligence, Andy suffers from learning disabilities and has a host of other problems. In July, 1985, he was injured in an automobile accident that resulted in multiple physical handicaps. In addition, Andy is plagued by a gender identity disorder and the many emotional difficulties associated with this condition.

During the 1986–87 school year, the District of Columbia Public Schools ("DCPS") placed and funded Andy, pursuant to the Education of the Handicapped Act, at the Episcopal Center for Children ("Episcopal"), a private school near Andy's home. By letter dated November 25, 1986, Annette Brandt, a social worker at Episcopal, advised the DCPS that Episcopal would not be an appropriate educational placement for Andy during the 1987–88 school year. In consultation with Andy's teachers, therapists, and parents, the DCPS developed an IEP for Andy for the 1987–88 school year; pursuant to that plan, the DCPS recommended placing Andy at the Buchanan Secondary Learning Disabilities Program ("Buchanan"), a public day school in the District of Columbia.

Andy's parents disagreed with that proposal. Instead, they apparently concurred with Ms. Brandt's suggestion that Andy be placed at the Lab School, a private, full-time special education facility for learning disabled students of average to above-average intelligence. Accordingly, they asked for a hearing to challenge the proposed placement at Buchanan.

---

**1.** An IEP is "(A) a [written] statement of the present levels of educational performance of [a handicapped] child, (B) a statement of annual goals, including short-term instructional objectives, (C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs, (D) the projected date for initiation and anticipated duration of such services, and (E) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved. 20 U.S.C. § 1401(a)(19). It is developed jointly by a qualified representative of the local educational agency, the child's teachers, parents, and, where appropriate, the child himself or herself. *Id.*

**2.** This Opinion represents the Court's findings of fact and conclusions of law, pursuant to Fed.R. Civ.P. 52(a). The Court must inform the parties that, because the parties never ordered a transcript of the trial, the Court's own notes are the only record of the trial currently available to it.

As mandated by the Education of the Handicapped Act, the District of Columbia afforded Andy and his parents a due process hearing on July 21, 1987. After taking testimony and considering evidence, the Hearing Examiner held that Buchanan was an appropriate educational placement for Andy for the 1987–88 school year. Shortly thereafter, Andy was enrolled in the Lab School and plaintiffs filed this action.[3]

## THE DISTRICT OF COLUMBIA IS REQUIRED TO MAINTAIN ANDY KNIGHT IN A PRIVATE SPECIAL EDUCATION FACILITY UNTIL THIS CASE IS RESOLVED.

In *Board of Education v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the Supreme Court detailed the scope of judicial review in suits brought under the Education of the Handicapped Act. The Court must examine whether the State has "complied with the procedures set forth in the Act," and, if so, must then consider whether "the individualized educational program developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits." *Id.* at 207, 102 S.Ct. at 3051. Although the Court must conduct an independent review of the evidence, it must also give "due weight" to the expert opinions rendered by the officials entrusted with the child's education. *Id.* at 205–06, 102 S.Ct. at 3050–51; *see also, e.g., McKenzie v. Smith*, 771 F.2d 1527, 1531 (D.C.Cir. 1985).

█ On the basis of this record, there can be no question but that DCPS did not comply with the Act's procedures. The Act establishes comprehensive provisions designed to facilitate parental participation in decisions about their child's education; moreover, the Act provides for administrative and judicial review of any decision with which the parents disagree. *See Honig v. Doe,* — U.S. ——, 108 S.Ct. 592, 596, 98 L.Ed.2d 686 (1988). Among these procedural safeguards is the "stay-put" provision, "which directs that a disabled child 'shall remain in (his or her) then current educational placement' pending completion of any [administrative or judicial] review proceedings, unless the parents and state or local educational agencies otherwise agree." *Id.* (*quoting* 20 U.S.C. § 1415(e)(3)); *see* 20 U.S.C. § 1415(e)(2) (stay-put provision applies to both administrative and judicial review). Thus, as Andy's parents most certainly did not agree to any placement proposed by the DCPS, the DCPS is required to maintain Andy at his "then current educational placement" until this lawsuit is resolved.

█ The parties agree that the DCPS could not follow this command. Andy's "then current educational placement" was the Episcopal Center, which the parties agree was not an "available" placement for Andy during the 1987–88 School Year. *See Defendants' Mark-up of Plaintiff's Proposed Findings of Fact and Conclusions of Law,* ¶ 16.[4] But there is a clear restriction on the DCPS in such a circumstance: Where the "current educational placement" is not "available" during a dispute over a handicapped child's proper placement, the law of this Circuit unequivocally demands that "DCPS ... locate and arrange a placement in a similar program ..." *McKenzie v. Smith*, 771 F.2d at 1533. Where the prior program was in "a private special education facility", so must the interim pro-

---

**3.** Plaintiffs originally sought a determination that the Lab School would be an appropriate educational placement for Andy for the coming school year as well as the previous one. Because of Andy's changed needs, plaintiffs have abandoned that claim. Accordingly, the only question before the Court is whether plaintiffs are entitled to reimbursement for the cost of Andy's schooling at the Lab School during the 1987–88 year.

**4.** In the Court's March 22, 1988, Order, it instructed the parties to "mark up" their opponents' Proposed Findings of Fact and Conclusions of Law by underlining those proposals with which they disagree, putting brackets around those proposals that they admit, and leaving unmarked those portions that they admit but deem irrelevant. As defendants put brackets around ¶ 16 of Plaintiffs' Proposed Findings of Fact and Conclusions of Law, they have admitted the contents of that paragraph.

gram be.[5] *Id.* The DCPS made no effort whatsoever to so provide.

Nor did the DCPS make such an effort in *McKenzie v. Smith,* a case that is remarkably similar to the case at bar. There, a handicapped student had been placed in a private day special education school. When the DCPS proposed changing his placement to a public school, the parents challenged the proposal, pursuant to § 1415(e) of the Education of the Handicapped Act. During the pendency of the administrative hearing, the private day school ceased being an "available" placement, and the parents enrolled the child in a private facility without DCPS approval; in fact, DCPS objected to this placement and argued that the child should have been placed in the proposed public school unless and until a hearing examiner or a court ordered otherwise.

The Court of Appeals for this Circuit rejected the DCPS argument and held that the DCPS was "obligated" to maintain the child in a private day special education facility until the suit ended. *Id.* at 1533. Accordingly, the Court ordered the DCPS to reimburse the parents for the cost of that private schooling.

Just as in *McKenzie,* in this case the DCPS ignored the clear commands of the law and failed to identify a facility "similar" to Episcopal for Andy during the pendency of this action. Although Andy's parents located such a facility at their own risk, they may be entitled to retroactive reimbursement. *See, e.g., Burlington School Committee v. Department of Education,* 471 U.S. 359, 370–71, 105 S.Ct. 1996, 2002–03, 85 L.Ed.2d 385 (1985). If their actions were taken out of a justified and good faith belief that the Lab School was an appropriate placement and that the Buchanan Center was not, retroactive reimbursement would be an appropriate remedy. *Id.*

## PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT FOR THE COSTS OF ANDY KNIGHT'S 1987–88 SCHOOLING AT THE LAB SCHOOL.

There are some statements in the record that hint at an unsavory motive on the part of Andy's parents. From the administrative record, it appears that Andy's mother was apprehensive about the racial mix at the Buchanan School. *Hearing transcript,* at 211–13. Were this the reason for Andy's placement at the Lab School, this Court would be the first to deny reimbursement to Andy's parents. But the administrative record, the testimony at trial, and the exhibits introduced by the parties support the conclusion that Andy's parents justifiably considered the Lab School an appropriate placement for Andy during the 1987–88 school year and justifiably believed that Buchanan was not a proper placement for him.

Andy's 1987–88 IEP specified the goals for his 1987–88 schooling, and it stated that those goals should be met through a special education instructional program, weekly group and individual psychological counseling, twice weekly speech and language therapy, and physical therapy, adaptive physical therapy, and occupational therapy administered once or twice each week. *DCPS–3.* The parties do not dispute the propriety of these goals. Rather, the dispute centers on the environment in which Andy's education would appropriately take place.

Ann Perry Owen, the Coordinator of the Junior High School program at the Lab School whom the Court certified as an expert witness pursuant to Fed.R.Evid. 702, testified that an educational program would not be appropriate for Andy unless it included one-to-one services and coordination between occupational and speech therapists and classroom teachers. She also testified that a facility in which Andy would be the most intelligent child, and one in which there were few girls, would not be

---

5. Andy was in the residential program at the Episcopal Center. As one of the reasons that Episcopal was no longer an "appropriate" placement for Andy was that it offered a residential, and not a day-school, program, *see DCPS 3,* the comparability requirement would not require the DCPS or the parents to identify another residential program; rather, the interim facility should have been, and was, a day program.

appropriate for him. Ms. Owen further testified that, as documented by the IEP developed for Andy at the Lab School and by the similar IEP developed by the DCPS, Andy requires adaptive physical education, occupational therapy, physical therapy, language therapy, and speech therapy.

These conclusions are buttressed by evidence available to the DCPS before it decided upon Andy's proper placement during the 1987–88 school year. In a report prepared as part of the DCPS's development of the 1987–88 IEP, Brenda McKinney, a Social Worker at the Episcopal Center, stated that, in addition to Andy's therapeutic needs, he required "a small, structured, emotionally supportive classroom setting, ... a challenging academic curriculum which addresses his learning delays, ... parent involvement in program with counseling as needed, and ... coordination of all services provided ..." *DCPS–1.*

It is clear that Buchanan could offer or arrange for much of the therapeutic service Andy requires. *See Transcript of Hearing,* at 43–63 (Testimony of Nancy Milner). It is equally clear that the gender mix, intellectual mix, and student-teacher-therapist ratio at Buchanan would not meet Andy's legitimate educational needs. Moreover, there is no evidence that Andy's parents would be involved in the Buchanan program, or that any family counseling would be available there. In light of Buchanan's inability to meet Andy's needs by providing him with these important features, it cannot be deemed to meet his 1987–88 educational needs.

In contrast, the Lab School fulfilled those needs and was an appropriate placement for Andy during the 1987–88 school year. *Owen testimony.* Accordingly, retroactive reimbursement of the Lab School's costs is an appropriate remedy for defendants' violation of the "stay put" provisions of the Education of the Handicapped Act.

## CONCLUSION

Andy Knight is a physically and emotionally handicapped youth entitled to a free, appropriate public education under the Education of the Handicapped Act. The District of Columbia recognizes Andy's entitlement, but it violated the clear commands of the law by failing to maintain the educational status quo while this suit was pending. Although Andy's parents may have had mixed motives for their actions, they pursued what they saw as Andy's best interests and placed him in an appropriate facility that approximated the conditions of the "then current educational placement" that obtained before this controversy arose.

This decision should not suggest that a handicapped child has the right to a state-funded education at a private institution; nor should it suggest that a parent can keep a handicapped child in a private school at the state's expense by first filing suit to prevent the child's placement in a public facility and then using all the delaying tactics known to law to forestall the day when the child enters the public school system. In this case, the DCPS had approved a private-school program for Andy Knight and they were obligated to locate a comparable and appropriate program suited to his needs until the legal challenge to the proposed change in placement was resolved. Because the DCPS completely abdicated this responsibility, it devolved upon Andy's parents, who found such a program for Andy. That private facility was in fact an appropriate setting for Andy's needs, and the facility proposed by the DCPS was not. Accordingly, under these facts, retroactive reimbursement is an appropriate remedy for the defendant's violation of the law.

The Court will enter an Order, of even date herewith, memorializing these findings.

## ORDER

In accordance with the Opinion in the above-captioned case, issued of even date herewith, and for the reasons set forth therein, it is this 23rd day of August, 1988,

ORDERED that the Court shall enter judgment in plaintiffs' favor in this case; and it is

FURTHER ORDERED that the Court shall dismiss this case but shall retain juris-

diction only for the purpose of determining the actual amount of plaintiffs' expenditures for Andy Knight's 1987–88 schooling at the Lab School of Washington and costs and attorney's fees in conjunction with this case; and it is

FURTHER ORDERED that the parties, through counsel, are directed to confer in person with respect to the above paragraph within 30 days from this date, and shall within that time advise the Court by joint stipulation of the results thereof and what further proceedings, if any, are necessary.